IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN HENRY RAMIREZ, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 4:21-cv-2609 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| BRYAN COLLIER, et al., | § | |
| *Defendants.* | § | |

───────────────────────────────

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A STAY OF EXECUTION

───────────────────────────────

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

JENNIFER WREN MORRIS
Assistant Attorney General
State Bar No. 24088680
   *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *jennifer.wren@oag.texas.gov*

*Counsel for Defendants*

# TABLE  OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A STAY OF
EXECUTION.................................................................................... 1

I.  TDCJ's Execution Procedures ..................................................... 2

    A. Post-*Murphy* policy ............................................................... 3

    B. Current policy ...................................................................... 4

    C. Ramirez's requests for TDCJ's accommodations ..................... 5

II. The Court Should Deny Plaintiff's Motion for a Stay of Execution ............ 7

    A. Standard of review..................................................................... 8

    B. Ramirez fails to show likely success or make a substantial case on their
merits of his claims .................................................................. 9

        1. RLUIPA claim .................................................................. 10

        2. The Free Exercise Clause claim........................................ 16

C. The balance of the equities weighs heavily in the State's favor ............... 17

    1. Delay, opportunism, and a presumption against a stay...................... 18

    2. The parties' respective interests ............................................ 21

CONCLUSION................................................................................... 23

CERTIFICATE OF SERVICE............................................................ 24

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

*Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) .......................................... 10, 11

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ............................................................. 8

*Board of Educ. of Kiryas Joel Village School Dist. v. Grumet, et al.*, 512 U.S.
    687 (1994) ........................................................................................................ 16

*Brown v. Collier*, 929 F.3d 218 (5th Cir. 2019) .................................... 10, 12, 17

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ........................... 12, 13, 14, 16

*Dunn v. Smith*, 141 S. Ct. 725 (2021) .............................................................. 3

*Garcia v. Castillo*, 431 F. App'x 350 (5th Cir. 2011) ........................................ 8

*Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) .................................................... 14

*Gutierrez v. Saenz*, 141 S. Ct. 127 (2020) ...................................................*passim*

*Harris v. Johnson*, 376 F.3d 414 (5th Cir. 2004)............................................... 7

*Hill v. McDonough*, 547 U.S. 573 (2006) .................................................... 8, 22

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ........................................................ 8

*Holt v. Hobbs*, 574 U.S. 352 (2015) ............................................................ 11, 14

*Lewis v. Casey*, 518 U.S. 343 (1996)................................................................. 14

*Lyng v. Nw. Indian Cemetery Protective Assoc.*, 485 U.S. 439 (1988)....... 11, 12

*Murphy v. Collier*, 139 S. Ct. 1475 (2019) ..................................................*passim*

*Nelson v. Campbell*, 541 U.S. 637 (2004)........................................... 8, 9, 21, 22

*Nken v. Holder*, 556 U.S. 418 (2009)................................................................. 8

*O'Bryan v. Estelle*, 691 F.2d 706 (5th Cir. 1982)........................................... 21

*O'Bryan v. McKaskle*, 729 F.2d 991 (5th Cir. 1984)...................................... 18

*Ochoa v. Collier*, 802 Fed. App'x 101 (5th Cir. 2020)...................................... 21

*Odneal v. Pierce*, 2009 WL 2982781 (S.D. Tex. Aug. 27, 2009) ...................... 14

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) ........................................... 16

*Sells v. Livingston*, 561 F. App'x 342 (5th Cir. 2014) ........................................ 8

*Sherbert v. Verner*, 374 U.S. 398 (1963) ......................................................... 10

*Turner v. Safley*, 482 U.S. 78 (1987) ........................................................ 16, 17

*Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986) ............................................. 14

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) ................................. 22

*Walker v. Epps*, 287 Fed. App'x 317 (5th Cir. 2008) ................................. 21, 22

*Walker v. Epps*, 287 Fed. App'x 371 (5th Cir. 2008) ................................... 7, 20

*Waters v. Texas*, 747 F. App'x 259 (5th Cir. 2019) ........................................... 9

*Whitley v. Albers*, 475 U.S. 312 (1986) .......................................................... 14

## Statutes

18 U.S.C. § 3626(a)(1)(A) ............................................................................... 15

42 U.S.C. § 2000cc ............................................................................................ 1

42 U.S.C. § 2000cc-1(a) ................................................................................... 10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN HENRY RAMIREZ, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 2:21-cv-167 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| BRYAN COLLIER, et al., | § | |
| *Defendants.* | § | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A STAY OF EXECUTION

Plaintiff John Henry Ramirez is a Texas death row inmate who is currently scheduled to be executed after 6:00 p.m. (CDT) on September 8, 2021. Ramirez filed an amended civil-rights complaint[1] asserting a denial of his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[2] Docket Entry (DE) 5. Thereafter, Ramirez filed the instant motion for stay of execution pending disposition of his § 1983 complaint.[3] DE 11. Defendants' opposition to Plaintiff's motion for stay follows.

---

[1]   On Sunday, August 22, 2021, Plaintiff filed a Second Amended Complaint. DE 12. Plaintiff, however, has not sought or been granted leave to amend his complaint as required under Fed. R. Civ. P. 15(a)(2). Plaintiff's third attempt to plead his case without leave should be stricken.

[2]   42 U.S.C. § 2000cc et seq.

[3]   Ramirez filed an Advisory relating to communications with the Office of the Attorney General regarding waiver of service. DE 9. Plaintiff served requests for waiver on August 17, 2021, a week after filing his lawsuit on August 10, 2021. Plaintiff's calculation of 60 days is incorrect and inconsistent. In one "notice," Plaintiff acknowledges that Defendants have 60

## I.     TDCJ's Execution Procedures

The Supreme Court stayed TDCJ Inmate Patrick Murphy's execution based on his claims challenging TDCJ's refusal to permit a Buddhist spiritual advisor in the execution chamber while permitting Christian or Muslim chaplains to be present during an execution. *Murphy v. Collier*, 139 S. Ct. 1475 (2019). Finding TDCJ's former policy unconstitutional for its denominational discrimination, Justice Kavanaugh provided two potential solutions: TDCJ could allow all inmates to have an advisor of their religion in the execution chamber, or it could exclude all such advisors from the chamber, allowing them in the witness viewing room instead. *Murphy v. Collier*, 139 S. Ct. at 1475–76 (Kavanaugh, J., concurring).

---

days from August 17, 2021. *See* DE 9-3 at 1. *But see* DE 9-1 at 3 (asserting that Defendants' 60 day began to run on August 10, 2021).  It is also unclear whether Plaintiff demands that Defendants waive their entitlement to 60 days before answering. In one "notice," Plaintiff acknowledges that Defendants shall have 60 days to answer pursuant to Rule 4. DE 9-3 at 1–2. But in another "notice," Plaintiff asks Defendants to answer the complaint within 3 days of receiving requests for waiver of service. DE 9-2 at 2 ("I respectfully ask that you answer the complaint by August 20, 2021).

Regardless, Defendants have not acted to delay litigation by adhering to the Rules of Civil Procedure. Defendants notified Plaintiff that (1) the Office of the Attorney General would accept waivers of service on defendants' behalf and would waive service in exchange for 60 days to answer as they are entitled under Rule 15; and (2) they would comply with the Court's scheduling order as it relates to expedited briefing on Plaintiff's motion for a stay of execution. Should this litigation proceed, Defendants reserve the right to file an answer or 12b motion, asserting their entitlement to applicable immunities and affirmative defenses by October 16, 2021.

### A. Post-*Murphy* policy

Shortly after Murphy's execution was stayed, TDCJ changed its protocol such that no religious advisors were permitted in the execution chamber. DE 1-1 at 8. To accommodate inmates' religious practices, TDCJ facilitated visitation on execution day with a TDCJ chaplain or an outside spiritual advisor (subject to restrictions). DE 1-1 at 8. During the execution, the advisor was allowed to be present in the witness viewing room. DE 1-1 at 8.

TDCJ's post-*Murphy* policy formed the basis of several § 1983 complaints—including Ramirez's in August last year—alleging that their spiritual advisor's exclusion from the chamber violated RLUIPA and the First Amendment. DE 1; Complaint, *Gutierrez v. Saenz, et al.*, No. 1:19-cv-185, DE 1 (S.D. Tex. Sept. 26, 2019); Complaint, *Busby v. Collier*, *et al.*, No. 4:21-cv-297, DE 1 (S.D. Tex. Jan. 29, 2021) (with intervenor plaintiffs Quintin Jones and Ramiro Ibarra); Complaint, *Gonzales v. Collier*, No. 4:21-cv-828, DE 1 (S.D. Mar. 12, 2021).[4] Gutierrez obtained a stay of execution based on his § 1983 complaint. *Gutierrez v. Saenz*, 141 S. Ct. 127 (2020). And after the Supreme Court declined to vacate a stay based on Alabama's similar policy,[5] the State agreed to withdraw Ramirez's previous execution date in exchange for his

---

[4]    Relevant to the instant proceedings, Ramirez explicitly disavowed any need for his pastor to touch him in the execution chamber. Complaint at 5, *Ramirez v. Collier*, No. 2:20-cv-205, DE 1 (S.D. Tex. Aug. 7, 2020).

[5]    *See Dunn v. Smith*, 141 S. Ct. 725 (2021).

nonsuit of his § 1983 complaint. TDCJ's adoption of its current execution policy followed.

## B. Current policy

TDCJ released a revised Execution Procedure on April 21, 2021, which delineates a process for the approval of an inmate's spiritual advisor to be present in the execution chamber at the time of the execution. Def. Exhibit 1. The following process applies:

- "Upon the inmate's receipt of the Notification of Execution Date . . ., the inmate shall have thirty (30) days to submit a request in writing to the Death Row Unit Warden to have a TDCJ Chaplain or the inmate's spiritual advisor present inside the execution chamber during the inmate's scheduled execution."

- "The inmate's spiritual advisor must be included on the inmate's visitation list and have previously established an ongoing spiritual relationship with the inmate demonstrated by regular communications or in-person visits with the inmate before the inmate's scheduled execution date."

- The death-row inmate must provide the Death Row Unit Warden with contact information for the spiritual advisor, after which the warden will contact the spiritual advisor.

- Within fourteen (14) days of being contacted by the Death Row Unit Warden, the spiritual advisor will provide specific credentials demonstrating his official status as a spiritual advisor.

- TDCJ will perform a background check on the spiritual advisor.

- Before approval to be in the execution chamber, "the spiritual advisor must satisfactorily complete a two (2) hour, in-person orientation with a staff member of the Rehabilitation Programs

4

Division a minimum of ten (10) days before the inmate's scheduled execution date."

If denied the presence of his requested spiritual advisor, the inmate may appeal to the Director of the TDCJ Criminal Institutions Division. *Id.* at 4.

## C. Ramirez's requests for TDCJ's accommodations

On February 5, 2021, the 94th District Court of Nueces County issued an order setting Ramirez's execution for September 8, 2021. The court's order released Ramirez from any obligation he had pursuant to his agreement with the State:

> On August 12, 2020, Judge Tagle entered an order granting discovery in *Gutierrez v. Saenz et al.*, 1:19-cv-00185. The state of law regarding § 1983 actions alleging . . . RLUIPA violations will certainly be in a different place by the time any future death warrant is entered against Ramirez; at that point, Ramirez will re-calibrate any new 1983 petition he seeks to bring.

Notice of Non-Suit Without Prejudice at 2, *Ramirez v. Collier et al.*, No. 2:20-cv-205, DE 2 (S.D. Tex. Aug. 14, 2020).

On April 12, 2021, Ramirez submitted a step 1 grievance to TDCJ, in which he complained as he did in preparation for his previous § 1983 complaint about his pastor's exclusion from the execution chamber. Pl. Exhibit 4 at 1. While this policy necessarily prohibits Ramirez's pastor's physical contact with him during the execution, Ramirez said nothing about a need for physical contact. On April 14, 2021, TDCJ denied his step 1 grievance. Pl. Exhibit 4 at 2. On April 16, Ramirez filed a step 2 grievance. Pl. Exhibit 4 at 5. And on May

4, 2021, TDCJ responded, providing him with instructions on how to proceed to ensure his spiritual advisor's presence in the chamber with him.  Pl. Exhibit 4 at 6.

On June 8, 2021, Ramirez's counsel emailed TDCJ General Counsel, Kristen Worman, requesting that Pastor Moore be allowed to make physical contact with Ramirez during his execution. Def. Exhibit 2. Nine days later, Ms. Worman responded that TDCJ does not allow an inmate's spiritual advisor to touch him after they enter the execution chamber. Def. Exhibit 2.

On June 14, 2021, Ramirez filed a step 1 grievance complaining that his advisor would not be able to make physical contact with him during his execution, and, on July 2, 2021, TDCJ denied it. Pl. Exhibit 4 at 3–4. Thereafter, Ramirez filed a step 2 grievance and filed the instant § 1983 complaint in this Court. *See* Def. Exhibit 3; DE 1.

On June 17, 2021, Ramirez submitted a written request to the warden for his spiritual advisor, Pastor Dana Moore, to be present with him in the chamber during his execution. After verifying Pastor Moore's credentials and completing his background check, TDCJ approved his presence in the execution chamber, subject only to Pastor Moore's attendance of TDCJ's two-hour orientation on August 26, 2021. Upon completion, Pastor Moore will be cleared to go into the chamber with Ramirez during his execution. *See* DE 11 at 1.

## II.    The Court Should Deny Plaintiff's Motion for a Stay of Execution.

Ramirez requests a stay of execution. He begins with the wrong standard of review[6] and ends with conclusory allegations, which he takes to balance the equities in his favor. *See* DE 11 at 2, 9–10. In between, he cuts and pastes emails showing the State's expression of its expectation of his compliance with the governing rules and of its intention to take the time it is statutorily entitled to file a motion to dismiss. Interpreting the emails to be damning to the State or somehow supportive of his motion for a stay of execution, Ramirez reveals more of his own confusion about the suit he filed in this Court. In the few paragraphs he dedicates to relevant stay considerations, he claims he will be irreparably harmed if his spiritual advisor, who will be present in the execution chamber, is not allowed to make physical contact with him during his execution and that the equities weigh in favor of a stay. *See* DE 11 at 10. Wrong about both, Ramirez fails to establish an entitlement to a stay of execution.

---

[6]    On the second page of his motion, Plaintiff argues incorrectly that the Court may stay his execution if he satisfies the COA standard, i.e., that jurists of reason could debate his claims. *See* DE 11 at 2; *Walker v. Epps*, 287 F. App'x 371, 374 (5th Cir. 2008) (stating that COA standard is not stay standard). Then, he argues incorrectly that the Court may stay his execution if he presents a facially plausible claim sufficient to survive a Rule 12(b)(6) motion. *See* DE 11 at 9. The cases he cites do not support his contention, and the applicable standard refutes it. Part II.A *infra* (requiring a petitioner to establish likely success or a substantial case on the merits of his claim); *see also Harris v. Johnson*, 376 F.3d 414, 416–17 (5th Cir. 2004).

## A.    Standard of review

"Filing an action that can proceed under § 1983 does not entitle the [plaintiff] to an order staying an execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A request for a stay "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*. (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). Rather, Plaintiff must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id*. (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–96 (1983)). When the requested relief is a stay of execution, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "In a capital case, the movant is not always required to show a probability of success on the merits, but he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities[,] i.e., the other three factors[,] weighs heavily in favor of granting a stay." *Garcia v. Castillo*, 431 F. App'x 350, 355 (5th Cir. 2011) (cleaned up); *see Sells v. Livingston*, 561 F. App'x 342, 344 (5th Cir. 2014).

A federal court must also consider "the State's strong interest in proceeding with its judgment" and "attempt[s] at manipulation," as well as "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649–50. Indeed, "there is a strong presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id*. at 650.

**B.   Ramirez fails to show likely success or make a substantial case on their merits of his claims.**

Ramirez correctly anticipates Defendants' argument regarding his failure to demonstrate a likelihood of success or a substantial case on the merits of his First Amendment and RLUPIA claims.[7]   Notably, though, he does not say Defendants are wrong about that in his analysis of the issue. *See* DE 9. Nor does he acknowledge the elements his claims require for such a showing. Instead, he poses to the Court the possibility that he might meet the substantial-case burden because Murphy did. *See* DE 11 at 9. But Plaintiff's claims are not Murphy's.

The current TDCJ protocol, which allows inmates' spiritual advisors' presence in the execution chamber, is what Murphy asked for.   It remedies the

---

[7]   Defendants note that Plaintiff does not specifically address whether his claims call for mandamus relief beyond this Court's jurisdiction. *See Waters v. Texas*, 747 F. App'x 259, 260 (5th Cir. 2019). Consequently, Plaintiff cannot establish he is likely to succeed on the merits of his claims.

denominational discrimination of the pre-*Murphy* protocol, while also accommodating inmate requests that the post-*Murphy* protocol did not. Yet Plaintiff complains that the neutral and accommodating protocol is not accommodating enough, as it does not allow the hands-on Protestant blessing (that he recently decided his religious beliefs require). If any court has ever found a prison's prohibition of spiritual advisors' physical contact with inmates during executions violative of RLUIPA or the First Amendment, Ramirez has not found it. And the Defendants have not either.

### 1. RLUIPA claim

To establish a claim under RLUIPA, Plaintiff must show that the challenged government conduct substantially burdens his religious exercise. 42 U.S.C. § 2000cc-1(a); *see also Brown v. Collier*, 929 F.3d 218, 228–29 (5th Cir. 2019). A substantial burden is one that forces a person to choose between following the precepts of his religion or receiving some otherwise available benefit and truly pressures him to substantially modify his religious behavior. *Adkins v. Kaspar*, 393 F.3d 559, 569–70 (5th Cir. 2004) (citing *Sherbert v. Verner*, 374 U.S. 398 (1963)). But a policy "does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit . . . not . . . generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570. "Incidental effects" of policies, "which may make it more difficult to practice

10

certain religions, but which have no tendency to coerce individuals into acting contrary to their religious beliefs" are not a substantial burden within the meaning of RLUIPA. *Lyng v. Nw. Indian Cemetery Protective Assoc.*, 485 U.S. 439, 450–51 (1988).

As in the Federal Bureau of Prisons (BOP),[8] TDCJ allows outside spiritual advisors into the execution chamber but does not allow their physical contact with inmates therein. Without a word on the BOP's policy, Ramirez argues that TDCJ's policy prohibits him from "engaging in vitally important religious practices . . . at the end of his life" that "substantially burden[] his practice of religion." DE 1 at 13. Likening his instant claim to unrelated religious challenges to an Arkansas prison's grooming policy, Ramirez alleges a substantial burden. *See* DE 5 at 13 (citing *Holt v. Hobbs*, 574 U.S. 352, 358 (2015)). But TDCJ's limitation of accommodations believed to enhance an inmate's blessing is different than forcing an inmate to do what his religious tenants forbid. The former does not impose a substantial burden on religious practice. *See Adkins*, 393 F.3d at 570 (stating that policy that prevents adherent from enjoying some benefit that is not generally available is not a substantial burden). The latter does. *Hobbs*, 574 U.S. at 358.

---

[8]     *See* Order Finding TDCJ's Security Concerns Insufficient to Exclude Outside Spiritual Advisors from Chamber at 12–13, *Gutierrez v. Saenz et al.*, No. 1:19-cv-185, DE 124 (citing BOP memorandum outlining its execution procedure).

TDCJ is not forcing or enticing Ramirez to do anything. In fact, the current protocol accommodates his religious needs by allowing his pastor to visit and pray out loud with him for up to two hours immediately prior to his execution. But when they both enter the chamber, security concerns require restrictions. Strapped to a gurney in restraints, Ramirez's religious behavior before he passes will be the same wherever his pastor's hands may fall. Nor does Ramirez allege that passing without spiritual hands upon him violates his religion. Absent TDCJ imposed pressure or coercion to behave in a manner that violates his religious beliefs, Ramirez cannot establish the substantial burden that he must. *See Brown*, 929 F.3d at 229; *Lyng*, 485 U.S. at 450–51. Such is futile to his RLUIPA claim and his stay motion as it relates to same, as the likelihood of a futile claim's success on the merits is low, to say the least.

Even if Ramirez demonstrates that TDCJ's current protocol imposes a substantial burden on his religious exercise, he cannot make a strong showing that it is not the "least restrictive means" of furthering its compelling security interest. *See Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). RLUIPA is particularly sensitive to prison security concerns. *Id.* at 723. And courts must apply its provisions "with due deference to the experience and expertise of prison administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723.

12

Plaintiff suggests that the security interests that inform TDCJ's current execution protocol are speculative and hypothetical because a district court found that the interests informing its previous policy were. DE 5 at 12–13, 15 (citing Order Finding TDCJ's Security Concerns Insufficient to Exclude Outside Spiritual Advisors from Chamber at 29, *Gutierrez v. Saenz et al.*, No. 1:19-cv-185, DE 124). But the previous court's assessment of the risks associated with an outside spiritual advisor's presence in the chamber hinged upon TDCJ's ability to mitigate those risks, as the BOP had done with its no-contact policy and other restrictions. *See* Order at 12–13, 15, *Gutierrez v. Saenz et al.*, No. 1:19-cv-185. Now that TDCJ has revised its policy to accommodate an outside spiritual advisor's presence in the chamber and used its resources to mitigate the associated risks, Ramirez calls TDCJ's concerns "illusory." DE 5 at 11. The BOP's policy, however, underscores that experienced prison officials believe the risk associated with an outsider's physical contact with an inmate in the chamber is real. *See* Order at 13, *Gutierrez v. Saenz et al.*, No. 1:19-cv-185.

In any event, deference is owed to TDCJ's administrators, not to a district court's assessment of TDCJ's security risks or opinions on how TDCJ should allocate its resources to mitigate same. *See Cutter*, 544 U.S. at 723. And RLUIPA allows prison administrators to take prophylactic measures to

prevent or reduce security breaches before they occur. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 322 (1986).

Consistent with the Supreme Court's guidance, TDCJ has designed the least restrictive means of furthering its compelling security interest. Plaintiff fails to identify any other state that allows outside spiritual advisors to enter and make physical contact with inmates in the execution chamber, whereas the Defendants demonstrate that the federal government does not. *See Holt*, 574 U.S. at 368 (comparing complained-of practice to practice of other jurisdictions). If the Court overrides TDCJ prison administrators' execution policy, it is sure to entangle itself and its sister courts in the execution process. *But see Cutter*, 544 U.S. at 726 ("Should inmate requests for religious accommodations . . . jeopardize the effective functioning of an institution, the facility would be free to resist the imposition."); *Lewis v. Casey*, 518 U.S. 343, 362 (1996) (noting that federal courts are not to become "enmeshed in the minutiae of prison operations"); *Odneal v. Pierce*, 2009 WL 2982781, at *5 (S.D. Tex. Aug. 27, 2009) ("The Fifth Circuit has explained that federal courts 'are not to micromanage state prisons.'") (quoting *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004)); *cf. Udey v. Kastner*, 805 F.2d 1218, 1221 (5th Cir. 1986) ("We believe that the probable proliferation of claims, and the concomitant entanglement with religion that processing *multiple* claims would require, does constitute a problem that the state has a good reason to avoid.") (emphasis

14

in original).[9] More inmate accommodation requests would be sure to follow, in which federal courts would be asked to micromanage the details of where a spiritual advisor may stand, what they may say, what they may touch, and how they may be guarded. Courts should not become entangled in the minutia of a highly sensitive and secure process that requires elevated control and precision by prison administrators.[10]

Finally, the relief Plaintiff seeks will require TDCJ to accommodate blessing rituals from other religions, too. Where a Protestant may request his pastor's hands upon him as he passes, a Muslim may prefer for his body to be washed and shrouded immediately upon his passing, and a Buddhist, that his body be untouched for seven days after his death. True, the non-Protestant blessings above are likely to involve different security risks and/or costs. But also true is that TDCJ's accommodation of one religion's blessing in the chamber, to the exclusion of others, effectively reintroduces the

---

[9]    For the same reason, Plaintiff is not entitled under the PLRA to the relief he seeks because "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). "The Court shall not grant or approve any prospective relief unless the court finds such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* Moreover, "[t]he Court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

[10]    *See, e.g.*, Order at 3, *Gutierrez v. Saenz, et al.*, No. 1:19-cv-185, DE 172 (addressing Gutierrez's request for his advisor to pray uninterrupted for several minutes while touching his shoulder before the lethal injection is administered until he is pronounced dead).

denominational discrimination that the Supreme Court required TDCJ to remove. *See Murphy*, 139 S. Ct. at 1475; *see also Cutter*, 544 U.S. at 709 (citing *Board of Educ. of Kiryas Joel Village School Dist. v. Grumet et al.*, 512 U.S. 687 (1994)) (indicating that RLUIPA's prescriptions must "be administered neutrally among different faiths").

Plaintiff fails to make a substantial case on the merits of his RLUIPA claim because TDCJ's execution protocol does not substantially burden his exercise of religion. And even if it did, the policy is the least restrictive means of furthering TDCJ's compelling interest in prison security. *See Cutter*, 544 U.S. at 720. Consequently, Plaintiff is not entitled to a stay of execution for his RLUIPA claim.

### 2.    The Free Exercise Clause claim

Plaintiff also claims that TDCJ's policy violates the First Amendment's Free Exercise Clause. DE 5 at 10–12. And again, he applies the wrong standard to prove it. *See* DE 5 at 12 (asserting strict scrutiny standard applies). The reasons RLUIPA requires courts to defer to prison-administrator-authored prison policies apply equally in the context of Free Exercise claims. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Where a prison regulation forms the basis of such a claim, "the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (citing *Turner v.*

*Safley*, 482 U.S. 78, 89 (1987)); *Brown v. Collier*, 929 F.3d 218, 232 (5th Cir. 2019).

Ramirez's claim plainly fails to satisfy *Turner*'s test. First, Ramirez cannot show that TDCJ's revised protocol is not rationally connected to its security interest. *See Turner*, 482 U.S. at 89. Second, he cannot show there are no alternative means for him to exercise his religion, as TDCJ is allowing his pastor to enter the chamber to pray with him.[11]   Third, Ramirez is not likely to succeed on the merits of his claim considering the impact the accommodation—i.e., the "ripple effect"—would have on prison resources. *Turner*, 482 U.S. at 90. Lastly, Plaintiff is not likely to succeed in showing the existence of a readily available alternative, where he offers none, and the only alternative policy before the Court is the BOP's, which imposes the same no-contact restriction for outside advisors. Because Ramirez fails to make a substantial case on the merits of his Free Exercise Claim, he is not entitled to a stay of execution to pursue it.

## C.     The balance of the equities weighs heavily in the State's favor.

If Ramirez manages to make a substantial case of his futile claims, he must also show that the balance of the equities weighs heavily in favor of a

---

[11]     As noted above, TDCJ's revised protocol also allows Ramirez's spiritual advisor to visit and pray with him for up to two hours immediately prior to his execution from 3:00 to 5:00 p.m.

stay. *O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984). He tries by plugging his conclusory allegations into the conclusory paragraph of his motion. DE 11 at 10. Defendants offer evidence for their side of the scale.

### 1.    Delay, opportunism, and a presumption against a stay

Plaintiff proclaims his diligence in filing his instant § 1983 complaint based on the § 1983 complaint he nonsuited last year. DE 11 at 3–4. Defendants agree that the nonsuited suit bears on the equities before the Court today, but they interpret its impact to the balance differently.

Perhaps if Ramirez's previous and now-pending § 1983 complaints raised the same claims, he could make his recycled-diligence argument with some level of credibility. But his claims in the respective complaints are different in a way that undermines his credibility and evinces a dilatory motive rather than a sincere one. Indeed, his asserted religious beliefs change when TDCJ accommodates them. Last year, his religious beliefs required only Pastor Moore's presence in the execution chamber for prayer and spiritual guidance during his execution. In fact, he explicitly stated, "Pastor Moore need not touch [him] at any time in the execution chamber." Complaint at 5, *Ramirez v. Collier*, No. 2:20-cv-205, DE 1 (S.D. Tex. Aug. 7, 2020). When TDCJ adopted its current protocol to accommodate Ramirez's request, it also mooted claims like those in his 2020 complaint. *See* Order Dismissing Spiritual Advisor Claim as Moot and Denying Leave to Amend at 8–9, *Gutierrez v. Saenz, et al.*, No.

18

1:19-cv-185, DE 172 ("The 2021 Execution Procedure moots Gutierrez's . . . claims" regarding the exclusion of his chaplain from the chamber). Having been accommodated as to his earlier claims, Ramirez's "sincerely-held religious beliefs" changed to require the physical touch he previously claimed was not required. *Compare* Complaint at 5, *Ramirez v. Collier*, No. 2:20-cv-205, DE 1 (S.D. Tex. Aug. 7, 2020) ("Pastor Moore need not touch [him] at any time in the execution chamber."), *with* Complaint at 5, *Ramirez v. Collier*, No. 2:20-cv-205, DE 1 (S.D. Tex. Aug. 7, 2020), *with* DE 5 at 5 ("Pastor Moore needs to lay his hands on Mr. Ramirez in accordance with his and Mr. Ramirez's faith tradition.").

Disregarding his disavowal of any need for physical contact, Ramirez directs the Court to the Bible and the historical practice of "[t]he laying on of hands" at the time of death. *See, e.g.*, DE 5 at 1, 3, 5, 11. A "long-held and practiced tradition . . . in the Protestant belief system . . . Ramirez adheres to," one would expect Ramirez to seek accommodations for it under the previous policy that necessarily precluded it. With no explanation from Ramirez, his change in religious needs reflects dilatory opportunism. If the Court stays Ramirez's execution so that TDCJ may once again amend its policy to allow physical contact, Defendants can reasonably expect that Ramirez would move the goalposts yet again. "The onus is not on the [] Defendants to guess or assume what claims [Ramirez] will ultimately seek. The onus was on [Ramirez]

19

to request the specific relief he needed from the beginning." *See* Order Dismissing Spiritual Advisor Claim as Moot and Denying Leave to Amend at 10, *Gutierrez v. Saenz, et al.*, No. 1:19-cv-185, DE 172.

Turning now to Ramirez's filing of his now-pending § 1983 complaint, Defendants acknowledge that he did not wait until the eleventh hour or the eve of his execution to file. But he also did not file in time for the pre-execution resolution he seems to believe he is entitled to. Shifting the blame, Plaintiff suggests that his agreement to nonsuit his previous complaint somehow absolves him of his future obligation to file any subsequent complaint to allow sufficient time for its resolution without a stay. *See* DE 5 at 4. But that was not part of the agreement (nor does it make sense standing alone). *See* Notice of Non-Suit Without Prejudice at 2, *Ramirez v. Collier et al.*, No. 2:20-cv-205, DE 2.

The state court's February 5, 2021, order resetting Ramirez's execution terminated any obligation he may have had to the State. Yet Ramirez waited four months before requesting from TDCJ the accommodation he now seeks. For Ramirez's delay, he expects the Defendants to make up for his lost time by waiving their entitlement to service and time to answer or plead in exchange for waiver. *See* DE 11 at 5–7. Additionally, on the eve of Defendant's deadline to file a response to Plaintiff's motion to stay execution, Ramirez files a second amended complaint, without seeking or receiving leave as required under Rule

20

15. Ramirez—not the State—is responsible for the timing of his suit, along with the briefing schedule and resolution that follows. And because he failed to file his complaint in time to "allow [for] consideration of the merits without . . . a stay," he invokes the "strong presumption against the grant of a stay." *Nelson*, 541 U.S. at 649–50.

### 2.    The parties' respective interests

Ramirez claims he will be irreparably injured if a stay does not issue because his is a capital case. *See* DE 11 at 3 (citing *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). While this factor is initially weighted in his favor, it is not the freebie he needs it to be. DE 11 at 3. It applies to every capitally sentenced inmate seeking a stay of execution, but most do not meet it. So where Ramirez's analysis ends, the irreparable injury inquiry begins. *See* DE 11 at 3. He cannot show that he will suffer irreparable injury if his case is not stayed because his claims will undoubtedly fail. *See, e.g.*, *Ochoa v. Collier*, 802 Fed. App'x 101, 106 (5th Cir. 2020); *Walker v. Epps*, 287 F. App'x at 375.

Further, Ramirez will not be irreparably injured, as TDCJ is providing him with precisely what he asked for just one year ago—Pastor Moore's presence in the execution chamber. However long-standing the religious tradition, such is insufficient to establish a harm personal to Ramirez, who only began to prioritize the practice when it provided a basis for stalling his execution. And even if the sincerity of Ramirez's request were not undermined

21

by his dilatoriness in making it, TDCJ's accommodations adequately mitigate whatever speculative harm he may claim based on his unfulfilled request for physical touch. *See Walker v. Epps*, 287 Fed. App'x 317, 376 (5th Cir. 2008) (quoting *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (stating that "[s]peculative injury is not sufficient" to demonstrate irreparable harm).

Any potential harm that may result from TDCJ's refusal to accommodate Ramirez's opportunism is not substantial enough to overcome the State's and victims' interest "in the timely enforcement of [Plaintiff's] sentence." *Hill*, 547 U.S. at 548; *Nelson*, 541 U.S. at 649–50. Controlling caselaw notwithstanding, Ramirez argues the State has no such interest because it agreed last year to withdraw his execution date. DE 11 at 9. The suggestion that the State's agreement in this case one year ago dissolves its interest today (or perhaps forever) is as untenable as it is conclusory.

The State's agreement in this case last year was based on TDCJ's previous policy that was under constitutional scrutiny. While the State maintains its general interest in the timely enforcement of its sentences, that interest yields to a case that raises an apparently valid constitutional claim. Defendants are confident that TDCJ's current policy will withstand Ramirez's constitutional and statutory challenges and maintain their interest in enforcing Ramirez's sentence.

## CONCLUSION

For these reasons, Plaintiff's request for a stay should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jennifer Wren Morris
JENNIFER WREN MORRIS
Assistant Attorney General
State Bar No. 24088680
Southern District No. 2237541

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
email: jennifer.wren@oag.texas.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I do herby certify that on August 23, 2021, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Seth Kretzer
9119 South Gessner, Ste. 105
Houston, TX 77054
seth@kretzerfirm.com

<u>s/ Jennifer Wren Morris</u>
JENNIFER WREN MORRIS
Assistant Attorney General