United States District Court
Southern District of Texas
**ENTERED**
September 02, 2021
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN HENRY RAMIREZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-2609 |
| | § | |
| BRYAN COLLIER, et al., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER DENYING STAY OF EXECUTION

In 2008, a Texas jury convicted John Ramirez of capital murder for killing Pablo Castro. As part of a robbery spree to get money for drugs, Ramirez confronted Castro outside a convenience store in Corpus Christi, stabbed him 29 times, and then robbed him of $1.25. *See Ramirez v. Stephens*, 641 F. App'x 312, 314 (5th Cir. 2016). For over a decade, Ramirez has challenged his conviction and sentence in state and federal court. The State of Texas has set an execution date of September 8, 2021. No litigation remains pending that challenges the state court judgment against Ramirez.

Ramirez has filed a lawsuit under 42 U.S.C. § 1983 alleging that Texas will execute him in a manner that will violate his religious rights. (Docket Entry No. 1). TDCJ previously had a policy of excluding all spiritual advisors from the execution

chamber itself.  In response to litigation, TDCJ implemented its current policy of allowing an outside spiritual advisor in the execution chamber, but requiring that the advisor not touch the prisoner or pray out loud.

The instant case is one of first impression as to the specific question of whether a person set to be executed has the right, under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq. ("RLUIPA") and the Free Exercise Clause of the First Amendment, to have an approved spiritual advisor lay hands upon the person's body and vocalize prayers during the execution. Specifically, Ramirez has filed suit because he would like his chosen spiritual advisor—Pastor Dana Moore, an ordained Christian minister at Second Baptist Church in Corpus Christi, Texas—to lay his hands on Ramirez and pray with him during the execution.

Ramirez has moved to stay his execution.  (Docket Entry No. 11).  The Defendants oppose Ramirez's motion.  (Docket Entry Nos. 13, 18).  For the reasons discussed below, the Court will **DENY** Ramirez's motion.

## I.    Stay of Execution Standard

Given the short time remaining, this case can only proceed if this Court intervenes in the State's execution of its otherwise-valid judgment against Ramirez. A prisoner condemned to death, however imminent that death may be, has no automatic entitlement to a stay of execution. *See McFarland v. Scott*, 512 U.S. 849,

858 (1994). "A stay of execution is an equitable remedy that is not available as a matter of right." *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). A court considering a motion to stay an execution must consider the four factors outlined in *Nken v. Holder*, 556 U.S. 418 (2009): "(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest." *In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014) (quotation omitted).

## II.    The Law

Ramirez claims he will be executed under conditions that violate RLUIPA and the First Amendment. RLUIPA provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." RLUIPA "alleviates exceptional government-created burdens on private religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). Specifically, RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

3

(1)    is in furtherance of a compelling governmental
       interest; and

(2)    is the least restrictive means of furthering that
       compelling governmental interest.

42 U.S.C. § 2000cc-1(a).   RLUIPA "alleviates exceptional government-created
burdens on private religious exercise," without "elevat[ing] accommodation of
religious observances over an institution's need to maintain order and safety."
*Cutter*, 544 U.S. at 720.

Ramirez also claims that the prison policy violates his rights under the Free
Exercise Clause of the First Amendment.   Courts in this circuit look to the
reasonableness test from *Turner v. Safley*, 482 U.S. 78 (1987) to decide such claims.
*See Gutierrez v. Saenz*, 818 F. App'x 309, 313 (5th Cir. 2020); *Brown v. Collier*,
929 F.3d 218, 243 (5th Cir. 2019).   Under *Turner*, a court considers:

(1) whether a "valid, rational connection [exists] between the prison
regulation and the legitimate governmental interest put forward to
justify it," (2) whether there exist "alternative means of exercising the
fundamental right that remain open to prison inmates," (3) what
"impact accommodation of the asserted constitutional right will have
on guards and other inmates, and on the allocation of prison resources
generally," and (4) whether there is an "absence of ready alternatives"
to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (quoting *Turner*, 482 U.S. at
89-90).

4

### III.   Analysis

Ramirez has not shown that a stay of execution is appropriate in this case.  Of the stay-of-execution factors, the likelihood of success is often "the most critical." *Nken*, 556 U.S. at 434.  Courts describe the movant's burden as requiring a "strong" or "substantial" likelihood of success.  *See In re Garcia*, 756 F. App'x 391, 396 (5th Cir. 2018); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013).  Ramirez has not met that burden.

The parties focus much of their briefing on Ramirez's RLUIPA claim. RLUIPA provides in part that: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." *Cutter*, 544 U.S. at 720 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).  Ramirez's pleadings do not give any reason to doubt his sincerely held religious beliefs.  The parties debate whether TDCJ's limitations on Ramirez's spiritual advisor substantially burden his religious observance.  In particular, the Defendants argue that Ramirez has not shown that TDCJ policy "creates a 'substantial burden' on a religious exercise [that] truly pressures [him] to significantly modify his

religious behavior and significantly violate his religious beliefs." *Adkins*, 393 F.3d at 567.

The recent changes in TDCJ policy accommodate Ramirez's religious needs. Ramirez may visit with his spiritual advisor for several hours on the day of his execution. During that time, Ramirez may pray aloud with his pastor. TDCJ's policy allows his pastor to stand in his presence while the execution team carries out Ramirez's sentence. Ramirez has not identified any case requiring more or specifically finding a right to vocal prayer and holding the condemned man's hand during an execution.

The Defendants argue that the current TDCJ policy serves a "a compelling governmental interest"—minimizing risk and maintaining order during the execution procedure—and that it "is the least restrictive means of furthering that compelling governmental interest." TDCJ has a compelling interest in maintaining an orderly, safe, and effective process when carrying out an irrevocable, and emotionally charged, procedure. Prison administrators understandably create intricate and exacting execution protocols to minimize the unknowns and reduce risk. Issues of prison administration are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence . . . that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such

6

matters." *Pell v. Procunier*, 417 U.S. 817, 827 (1974); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) ("[W]e have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators . . . .").

Prison officials have a strong interest in "controlling access to" their execution chambers and in ensuring "that the execution occurs without any complications, distractions, or disruptions." *Murphy v. Collier*, 139 S. Ct. 1475, 1475-76 (2021) (Kavanaugh, J., concurring). TDCJ will accommodate Ramirez's religious beliefs by giving Ramirez access to his pastor on the day of execution and allowing him to stand nearby during the execution. As argued by the Defendants, further calling into question the prison officials' decisions about the execution process would entangle courts "in the minutia of a highly sensitive and secure process that requires elevated control and precision by prison administrators." (Docket Entry No. 13 at 15).

Concerns about maintaining precise order in the execution chamber are not hypothetical. The course of this lawsuit has already raised serious questions about whether Ramirez's spiritual advisor will abide by TDCJ's physical contact and verbal restrictions. TDCJ policy requires an inmate's chosen spiritual advisor to sign an agreement to "not disclose any information, including but not limited to the identities of [TDCJ] employees" learned "through [his] participation as a spiritual advisor in [Ramirez's] execution." (Docket Entry No. 14 at 8). Pastor Moore,

however, took a photograph of the agreement—which contained the name of a TDCJ employee—and sent it to Ramirez's attorney, Seth H. Kretzer.  Mr. Kretzer then intentionally included that photograph in a public court filing.  (Docket Entry No. 14 at 7).[1]  The Defendants now properly argue: "His violation of the agreement raises questions about his trustworthiness in complying with TDCJ's prohibitions against physical contact and audible prayer in the execution chamber—which was also driven by security interests Ramirez does not respect."  (Docket Entry No. 15 at 4).

Even if Ramirez could demonstrate that TDCJ's current protocol imposes a substantial burden on his religious exercise, he has not made a strong showing that it is not the "least restrictive means" of furthering its compelling interests.  *Cutter*, 544 U.S. at 720.  The Court finds that Ramirez has not made a strong or substantial showing of success on his RLUIPA claim.

For the same reasons discussed above, Ramirez has not met the first *Nken* factor regarding his First Amendment claim.  TDCJ's protocol is rationally related to its legitimate penological interest in security and in an orderly execution process. The Court finds that Ramirez has not made a strong showing of a potential First Amendment violation.  In sum, the Court finds that Ramirez has not met the first *Nken* factor.

---

[1]     At the Defendants' request, and over Kretzer's objection, the Court sealed the document due to such unauthorized disclosure.

The remaining *Nken* factors do not tip the scales in his favor.  By not making a strong showing that his claims have merit, Ramirez has likewise not shown a possibility of irreparable injury.  Granting of a stay would harm the Defendants by disallowing the execution of an otherwise-valid judgment against Ramirez in a timely manner.  Finally, while the "[p]ublic interest is never served by a state's depriving an individual of a constitutional right," *Kite v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978), the public has an "in timely enforcement of the death sentence." *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020).  The Court, therefore, finds that Ramirez has not shown entitlement to a stay of his execution.

## IV.   Conclusion

For the reasons discussed above, the Court **DENIES** Ramirez's motion to stay his execution.  (Docket Entry No. 11).

SIGNED at Houston, Texas, on this the **2** day of September, 2021.

DAVID HITTNER
United States District Judge